KOSHER DAIRY COMPANY, PLAINTIFF-APPELLEE, v. NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY, DEFENDANT-APPELLANT.

Argued November 9, 1911—Decided June 8, 1912.

1. It was error prejudicial to defendant to exclude the proffered testimony of the defendant's surveyor and photographer tending to show observations made by them at a railroad crossing nearly two years after the happening of an accident at said crossing, of the extent of view in the direction in which a locomotive engine of the defendant approached said crossing and killed several of the plaintiff's cattle, which were being driven over the crossing by the plaintiff's servants, to one approaching the crossing in the direction that the plaintiff's servants were, where it appeared that the road-bed had remained unchanged, and although it further appeared by testimony on behalf of the defendant, that it was uncertain whether at the time said observations were made certain obstructions and surroundings testified to by the plaintiff's witnesses to have existed at the time of the happening of the accident, and which it was claimed obscured the view in the direction in which defendant's locomotive engine approached the crossing, still existed at the time when the observations were made by the defendant's surveyor and photographer.

2. Though it appeared that the observations offered to be proved were made in the daytime and the accident happened in the dusk of the evening, and though the defendant's testimony left it uncertain whether the surroundings of the road-bed and the conditions at the crossing were the same when such observations were made as at the time of the accident, nevertheless such proffered testimony was admissible because the extent of view to be had at the crossing in the direction in which the defendant's locomotive engine approached bore materially upon the exercise of reasonable care by the plaintiff's servants at the time for the safety of the cattle in driving them on to the crossing; the probative weight to be given to such testimony was for the jury to pass upon, under all the circumstances, under proper instructions from the court.

---

On appeal from the Hoboken District Court.

Before Justices TRENCHARD and KALISCH.

For the appellant, *Collins & Corbin.*

For the appellee, *William B. Stites.*

The opinion of the court was delivered by

KALISCH, J.    The plaintiff's servants were driving nine of the plaintiff's cows across the Paterson avenue railroad crossing, in Jersey City, at about eight o'clock in the evening of the 18th of July, 1909, when a locomotive engine of the defendant company ran into the cows with the result that three of them were killed.    The plaintiff brought its action against the defendant company, in the Hoboken District Court, to recover damages for the loss of its three cows, upon the allegation that such loss was the result of the defendant company's servants' negligence in charge of the locomotive engine, failing to give either of the prescribed statutory signals for said crossing.

The case was tried by the court sitting with a jury.

A verdict was returned in favor of the plaintiff for $350.

At the close of the case the defendant moved for a direction of a verdict in its favor on two grounds—*first,* that there was no evidence of negligence on the part of the defendant; *second,* that contributory negligence on the part of the plaintiff's servants conclusively appeared.    Neither contention seems, to us, to contain any merit.

At the crossing, in question, the line of the defendant company and that of the Northern Railroad Company of New Jersey run parallel with each other, each company maintaining two tracks, an eastbound and westbound track, there being a space of forty-one feet between their respective lines at said crossing.    From the state of the case it appears that the cows were in charge of two servants, one of whom kept himself in the lead and the other in the rear of them.    In the direction which the cows were being driven the tracks of the Northern railroad would be the first to be crossed.    When the railroad crossing was reached Devon, who was the servant driving the cows, stopped them and Harney, who was the servant in the lead, went on to the tracks to make observations.

Upon this point, Devon testified as follows:

"*Q.* Did you stop before you crossed the track?

"*A.* Yes; they were all stopped and bunched up together.

"*Q.* Did you take any view of the tracks yourself?

"*A.* I could not just at present; I was behind them; I was behind the cattle.

"*Q.* What did Mr. Harney do?

"*A.* He looked up and down the tracks and said it was all right, to come ahead and drive up. He hollered to me."

Thereupon, it appears that Devon started to drive the cows across the tracks and had passed the two tracks of the Northern railroad in safety and was driving them towards the first track of the defendant company, several of the leading cows being then already on the track, when his attention was called to an approaching engine thereon, by his companion, but it was too late to save them from being hit. Devon further testified that he was on the lookout for a train and that he was in a position where if a bell had been rung or a whistle blown he would have heard it and that he heard neither a whistle blown nor a bell rung. It further appeared from the testimony of Devon and other witnesses that there was a curve in the track in the direction from which the locomotive engine was approaching, which prevented its being seen until it was within from two hundred and fifty to three hundred feet from the crossing. There was also testimony on the part of the plaintiff that there were trees and cattails which obstructed a clear view in the direction from which the locomotive engine was approaching. There was also testimony of other witnesses, on the part of the plaintiff, who were in a position to hear if a bell had been rung, or a whistle blown, to the effect that they heard neither a bell rung nor a whistle blown.

The failure, on the part of the defendant company, to give either of the statutory signals in approaching the crossing would constitute negligence. Whether the company performed its duty in that regard was a jury question. Whether plaintiff's servants exercised reasonable care in driving the cows over the tracks of the defendant, under the circumstances and conditions which presented themselves to them, was also a question for the jury to determine.

We find, therefore, no error in the refusal to direct a verdict for the defendant on either ground.

The defendant offered to show by a surveyor and photographer, by observations made by them in May, 1911, nearly two years after the accident happened, the extent of the view of an approaching westbound train, in the direction in which the plaintiff's servants were approaching with the cattle. This offer was overruled by the trial judge on the ground that it did not appear with sufficient certainty that the physical conditions at the crossing at the time observations were made were the same as they were at the time of the accident. It appeared that no change had been made in the road-bed. The trial judge erred in excluding the testimony offered. The extent of view which the plaintiff's servants had before they drove the cattle on to the crossing, in the direction in which the locomotive engine that hit the cattle approached such crossing bore materially upon the question whether the plaintiff's servants had exercised reasonable care for the safety of the cattle in doing so and thus were free from any negligence on their part contributing to the negligence charged against the defendant, and was a question of fact for the consideration of the jury. Though the observation was made nearly two years after the accident happened and though it was made in the daytime and the accident happened in the dusk of the evening, and though the testimony on behalf of the defendant left it uncertain whether some obstructions to the view, testified to by the plaintiff's witnesses as having existed at the time of the accident, still existed at the time when the observations were made by the defendant's surveyor and photographer, they did not constitute a sufficient legal basis upon which to exclude the proffered testimony. Such testimony was competent for the purpose for which it was offered. Its tendency was to establish a fact directly involved in the issue between the parties.

The circumstances attending and the then conditions and surroundings of the road-bed under which the surveyor and photographer made their observations did not render their testimony incompetent, irrelevant or immaterial, but rather affected its probative force which was within the province of the jury to pass upon under proper instructions from the

court. The exclusion of the proffered testimony was error prejudicial to the defendant and for that reason the judgment of the court below will be reversed and a new trial awarded.